IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| Thomas Lee Pelzer, | Case No. 8:10-cv-1694-MBS-JDA |
| Plaintiff, | **REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE** |
| v. | |
| Michael McCall; Florence Mauney; Ms. Johnson; Ms. Bratton; Miriam Cocciolone, | |
| Defendants. | |

This matter is before the Court on Defendants' motion for summary judgment. [Doc. 40.] Plaintiff, a prisoner proceeding pro se, brought this civil rights action under 42 U.S.C. § 1983. [Doc. 1.] Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(d), D.S.C., this magistrate judge is authorized to review all pretrial matters in cases filed under Title 42, United States Code, Section 1983, and submit findings and recommendations to the District Court.

Plaintiff's Complaint was filed on July 1, 2010 and generally alleges violations of his First, Fifth, and Fourteenth Amendment rights and negligence. [Doc. 1.] On April 6, 2011, Defendants filed a motion for summary judgment. [Doc. 40.] On April 7, 2011, the Court issued an Order pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), advising Plaintiff of the summary judgment procedure and the possible consequences if he failed to adequately respond to Defendants' motion for summary judgment. [Doc. 41.] On May 5, 2011, Plaintiff filed a response in opposition to Defendants' motion for summary judgment. [Doc. 46.] Defendants' motion is now ripe for review.

**BACKGROUND**

At all times relevant to this action, Plaintiff was in the custody of the South Carolina Department of Corrections ("SCDC") and housed at Perry Correctional Institution ("PCI") in the Special Management Unit ("SMU").[1] [*See* Doc. 1 at 2–3.] Plaintiff alleges that after Defendant Ms. Johnson ("Johnson") became responsible for distributing law books, Plaintiff's access to the law library was no longer meaningful, adequate, or sufficient, which caused extreme prejudice to all of his pending litigation. [*Id.* ¶ 15[2]; *see also id.* ¶ 61.] In particular, Plaintiff alleges Johnson told Plaintiff on December 23, 2009 that he would not be getting more law books because he was not using them, and on the same day, Johnson charged Plaintiff with masturbating in front of her. [*Id.* ¶ 30.] Plaintiff further alleges Defendant Florence Mauney ("Mauney") noted on Johnson's report of the December 23, 2009 incident that Plaintiff was on law library suspension for thirty days, but when he was convicted of the charge after a disciplinary hearing, law library restriction was not included as a sanction. [*Id.* ¶¶ 30, 34.] However, Plaintiff alleges he was restricted from receiving law books for thirty days. [*See id.* ¶¶ 19–40.]

Additionally, Plaintiff alleges Defendant Miriam Cocciolone ("Cocciolone")[3] failed to process some of Plaintiff's grievances relating to the failure to provide him with law books and failed to investigate the claims presented in Plaintiff's Grievance Number 0212-10. [*Id.*

---

[1] Plaintiff was released in November 2011. [*See* Doc. 48 (notice of change of address and letter).]

[2] With respect to Plaintiff's documents, the paragraph numbers referenced by the Court are the paragraphs numbered by Plaintiff—i.e., the paragraph numbers that are handwritten on pages 3–22 of Docket Entry 1.

[3] Defendants indicate Cocciolone is now Miriam Snyder. [Doc. 40-1 at 1; Doc. 40-14.] For purposes of this Report and Recommendation, the Court will refer to this Defendant as Cocciolone.

¶¶ 52–60.] Further, Plaintiff alleges that, in responding to a request Plaintiff sent to Defendant Michael McCall ("McCall"), Defendant Ms. Bratton ("Bratton") (1) did not address Plaintiff's allegation that he was deprived law books through January 2010 and (2) lied about the dates Plaintiff received law books in February 2010.[4]  [*Id.* ¶ 54.] Plaintiff also alleges he wrote a Request to Staff to Bratton on March 15, 2010, informing her that Johnson was depriving Plaintiff of access to law books, which was hindering his litigation, but Bratton did not respond to Plaintiff's request. [*Id.* ¶ 47.]

> As to his claims for relief, Plaintiff alleges the following:
>
> (1) McCall, Mauney, Johnson, and Bratton violated Plaintiff's First Amendment right to access to courts by depriving Plaintiff of meaningful and adequate access to the courts via the law library [*id.* ¶ 64];
>
> (2) Cocciolone violated Plaintiff's First Amendment right to seek redress of grievances [*id.* ¶ 65];
>
> (3) Defendants' actions violated Plaintiff's Fifth and Fourteenth Amendment rights to due process and procedural due process [*id.* ¶ 66];
>
> (4) Defendants' actions violated Plaintiff's Fourteenth Amendment right to equal protection [*id.* ¶ 67]; and
>
> (5) Cocciolone was grossly negligent in responding to and taking action on Plaintiff's grievances, Numbers 0212-10 and 0156-10 [*id.* ¶ 68].

Plaintiff seeks a declaration that the acts and omissions of Defendants violated Plaintiff's rights under the Constitution and laws of the United States; nominal damages in the amount of $350,000 against each Defendant jointly and severally; punitive damages in the amount of $350,000 against each Defendant jointly and severally; compensatory damages in the amount of $25,000 against each Defendant jointly and severally; a jury trial; Plaintiff's

---

[4] Plaintiff alleges he addressed his request to McCall, who forwarded the request to Bratton. [Doc. 1 ¶ 54.]

costs of suit; and any additional relief the Court deems just, proper, and equitable. [*Id.* ¶¶ 69–75.]

## APPLICABLE LAW

**Liberal Construction of Pro Se Complaint**

Plaintiff brought this action pro se, which requires the Court to liberally construe his pleadings. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). Pro se pleadings are held to a less stringent standard than those drafted by attorneys. *Haines*, 404 U.S. at 520. Even under this less stringent standard, however, the pro se complaint is still subject to summary dismissal. *Id.* at 520–21. The mandated liberal construction means only that if the court can reasonably read the pleadings to state a valid claim on which the petitioner could prevail, it should do so. *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999). A court may not construct the plaintiff's legal arguments for him. *Small v. Endicott*, 998 F.2d 411, 417–18 (7th Cir. 1993). Nor should a court "conjure up questions never squarely presented." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

**Requirements for a Cause of Action Under § 1983**

Section 1983 provides a private cause of action for plaintiffs alleging constitutional violations by persons acting under color of state law. Section 1983 provides, in relevant part,

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or any person within the jurisdiction thereof to the deprivation of any

4

> rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. To establish a claim under § 1983, a plaintiff must prove two elements: (1) that the defendant "deprived [him] of a right secured by the Constitution and laws of the United States" and (2) that the defendant "deprived [him] of this constitutional right under color of [State] statute, ordinance, regulation, custom, or usage." *Mentavlos v. Anderson*, 249 F.3d 301, 310 (4th Cir. 2001) (citation and internal quotation marks omitted).

The under-color-of-state-law element, which is equivalent to the "state action" requirement under the Fourteenth Amendment,

> reflects judicial recognition of the fact that most rights secured by the Constitution are protected only against infringement by governments. This fundamental limitation on the scope of constitutional guarantees preserves an area of individual freedom by limiting the reach of federal law and avoids imposing on the State, its agencies or officials, responsibility for conduct for which they cannot fairly be blamed.

*Id.* at 310 (quoting *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 658 (4th Cir. 1998)) (internal citations and quotation marks omitted). Nevertheless, "the deed of an ostensibly private organization or individual" may at times be treated "as if a State has caused it to be performed." *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001). Specifically, "state action may be found if, though only if, there is such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.'" *Id.* (quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974)). State action requires both an alleged constitutional deprivation "caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is

responsible," and that "the party charged with the deprivation must be a person who may fairly be said to be a state actor." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982). A determination of whether a private party's allegedly unconstitutional conduct is fairly attributable to the State requires the court to "begin[ ] by identifying 'the specific conduct of which the plaintiff complains.'" *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 51 (quoting *Blum* v. *Yaretsky*, 457 U.S. 991, 1004 (1982)).

**Summary Judgment Standard**

Rule 56 states, as to a party who has moved for summary judgment:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue. *Id.* Under this

6

standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. *Anderson,* 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir.1985), *overruled on other grounds*, 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Further, Rule 56 provides in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> > (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> >
> > (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). Accordingly, when Rule 56(c) has shifted the burden of proof to the non-movant, he must produce existence of a factual dispute on every element essential to his action that he bears the burden of adducing at a trial on the merits.

7

# DISCUSSION

**Claims for Injunctive and/or Declaratory Relief are Moot**

As an initial matter, because Plaintiff is no longer incarcerated at PCI [*see* Doc. 48 (notice of change of address and letter indicating Plaintiff was released in November 2011)], his claims are moot to the extent he is seeking injunctive and/or declaratory relief. *Slade v. Hampton Roads Reg'l Jail*, 407 F.3d 243, 248–49 (4th Cir. 2005) (holding that former detainee's request for injunctive relief was moot). Plaintiff's claims for monetary damages, however, survive his release from PCI, *id.*, and, as public officials, Defendants are subject to suit for damages in their individual capacities[5] in a § 1983 lawsuit, *Hafer v. Melo*, 502 U.S. 21, 31 (1991); *Goodmon v. Rockefeller*, 947 F.2d 1186, 1187 (4th Cir. 1991). Nevertheless, for the reasons set forth below as to Plaintiff's damages claims, the evidence is insufficient to create a genuine issue of fact as to whether Defendants violated Plaintiff's constitutional rights.[6]

---

[5] To the extent Plaintiff brings this suit against Defendants in their official capacities, Defendants are entitled to immunity pursuant to the Eleventh Amendment from Plaintiff's claims for monetary damages. The Eleventh Amendment prohibits federal courts from entertaining an action against a state. *See, e.g.*, *Alabama v. Pugh*, 438 U.S. 781, 782 (1978) (per curiam) (citations omitted); *Hans v. Louisiana*, 134 U.S. 1, 10–11 (1890). Further, Eleventh Amendment immunity "extends to 'arm[s] of the State,' including state agencies and state officers acting in their official capacity," *Cromer v. Brown*, 88 F.3d 1315, 1332 (4th Cir. 1996) (alteration in original) (internal citations omitted), because "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office . . . [and] is no different from a suit against the State itself," *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (internal citation omitted). Therefore, Eleventh Amendment immunity protects state agencies and state officials sued in their official capacity from liability for monetary damages under 42 U.S.C. § 1983. *Id.* As a result, to the extent Plaintiff has alleged claims for monetary damages against Defendants in their official capacities, those claims must be dismissed because Defendants in their official capacities are entitled to immunity pursuant to the Eleventh Amendment.

[6] Plaintiff's Complaint contains no direct allegations of wrongdoing by McCall. However, liberally construing the Complaint, the Court finds any claim Plaintiff has asserted against McCall is a claim of supervisory liability. [*See* Doc. 1 ¶ 46 (stating Plaintiff reported to McCall, who is responsible for the operation of PCI, that Plaintiff was being deprived of access to law books).] Because there is no doctrine of respondeat superior in § 1983 claims, *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691–94 (1978), defendants are liable in their individual capacities only for their personal wrongdoing or supervisory actions

**Access to Courts Claim**

Plaintiff contends McCall, Mauney, Johnson, and Bratton violated Plaintiff's First Amendment right to access to the courts by depriving Plaintiff of meaningful and adequate access to the courts via the law library. [Doc. 1 ¶ 64.] Specifically, Plaintiff alleges that, although he requested law books every day, Johnson routinely failed to bring Plaintiff law books. [*Id.* ¶¶ 14–51.] Further, Plaintiff alleges Johnson and Mauney imposed a thirty-day law library restriction on Plaintiff, depriving him of law books for thirty days. [*Id.* ¶ 30; *see id.* ¶¶ 19–40.] Additionally, Plaintiff alleges Bratton did not address Plaintiff's allegation that he was deprived law books through January 2010 and lied about the dates Plaintiff received law books in February 2010. [*Id.* ¶ 54.]

Plaintiff alleges that, because he was deprived access to law books, he could not litigate four civil cases. [*Id.* ¶¶ 40, 42–45, 61.] Specifically, Plaintiff alleges he could not file objections in Civil Action No. 2:09-3109-MBS-RSC ("09-3109") because the objections were due during the time he was restricted from using the law library and he could not research the precedents cited in the Report and Recommendation recommending

---

that violated constitutional norms, *see Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994). A plaintiff must establish three elements to prevail under § 1983 on a theory of supervisory liability:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices[]"; and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Id.* (citations omitted). Here, as discussed below, Plaintiff has failed to establish that a subordinate of McCall "was engaged in conduct that posed 'a pervasive and unreasonable risk' of constitutional injury" to Plaintiff. *See id.* (citation omitted). Accordingly, to the extent Plaintiff has alleged a claim against McCall, the Court concludes Plaintiff has failed to allege a violation of his constitutional rights and recommends Defendants' motion for summary judgment be granted as to this claim.

dismissal.  [*See id.* ¶ 21.]  This case was dismissed by order of the district court on January 19, 2010.  [*Id.* ¶ 40; Doc. 1-1 at 42–43.]  Further, Plaintiff alleges he sought and obtained a voluntary dismissal of Civil Action No. 09-2559 ("09-2559") because he could not get the law books he needed to litigate his claims.  [Doc. 1 ¶ 44; Doc. 1-1 at 44.]  The order of dismissal was entered on April 13, 2010.  [Doc. 1 ¶ 45; Doc. 1-1 at 45–46.]  Finally, Plaintiff alleges he was unable to file a brief or any motion in his Administrative Law Court appeals of Grievance Numbers 813-08 and 1090-08 ("ALC appeals"), and these appeals were dismissed on February 4, 2010.  [Doc. 1 ¶ 61.]

An inmate has a constitutionally protected right of access to the courts.  *Bounds v. Smith*, 430 U.S. 817, 821 (1977) (citing *Ex parte Hull*, 312 U.S. 546 (1941)).  To state a claim of that right, an inmate must include in his complaint factual allegations that tend to support his claim of deprivation of access, *White v. White*, 886 F.2d 721, 723 (4th Cir. 1989), including allegations of an actual injury resulting from the alleged deprivation of access, *Lewis v. Casey*, 518 U.S. 343, 349 (1996) ("The requirement that an inmate alleging a violation of *Bounds* must show actual injury derives ultimately from the doctrine of standing, a constitutional principle that prevents courts of law from undertaking tasks assigned to the political branches.").  An inmate establishes he has suffered an actual injury, and, therefore, a deprivation of his right of access to the courts, if he demonstrates "an actionable claim [challenging his conviction or the conditions of his confinement] which he desired to bring has been lost or rejected, or that the presentation of such a claim is currently being prevented, because th[e] capability of filing suit has not been provided."  *Id.* at 356.  With respect to access to courts claims regarding legal research, "the inmate . . . must . . . demonstrate that the alleged shortcomings in the library or legal assistance

program hindered his efforts to pursue a legal claim." *Id.* at 351; *see also id.* at 353 & n.3 (stating the inmate must demonstrate that the claim impeded or frustrated by the allegedly inadequate law library or legal assistance program was nonfrivolous).

Here, Plaintiff has failed to allege a violation of his constitutional rights because he has failed to demonstrate an actual injury—Plaintiff has failed to demonstrate that any of the cases he alleges were frustrated by his lack of access to law books were actionable, i.e., nonfrivolous. While Plaintiff asserts his claims were nonfrivolous [Doc. 46-1 at 6], Plaintiff has failed to direct the Court to facts or case law supporting his assertion. Further, the Court notes Plaintiff was not deprived of access to law books during the entire time his actions were pending, and the only action that was arguably directly affected by Plaintiff's lack of access to law books was 09-3109—Plaintiff did not receive any law books during the period allowed for objections to the Report and Recommendation recommending dismissal of 09-3109.[7] However, a review of the Report and Recommendation reveals the magistrate judge recommended dismissing Plaintiff's action because Plaintiff failed to state a claim upon which relief could be granted [Doc. 1-1 at 21–26], a deficiency Plaintiff could not have remedied by citing case law. Moreover, upon review, the district court concluded

---

[7] Plaintiff alleges he received law books on the following dates in 2009: November 17 and 18 [Doc. 1 ¶ 16] and December 1, 11, 14, 15, 21, 22 [*id.* ¶ 17]. Plaintiff alleges he received law books on the following dates in 2010: January 20, 22, 26, 28 [*id.* ¶ 41]; February 4, 10, 12, 17, 22 [*id.* ¶ 42]; March 1, 3, 9, 15, 17, 30 [*id.* ¶ 47]; April 1, 5, 6, 7, 12, 14, 20, 22, 27, 28, 29 [*id.* ¶ 49]; May 11, 12, 17, 19, 24, 25 [*id.* ¶ 50]. Plaintiff's case 09-2559 was filed on October 1, 2009 [*id.* ¶ 11], and on February 20, 2010, Plaintiff requested the case be voluntarily dismissed [*id.* ¶ 44; Doc. 1-1 at 44]. The magistrate judge entered a Report and Recommendation in 09-2559 on March 24, 2010, and Plaintiff filed objections on April 2, 2010. [Doc. 1-1 at 45.] The district court entered an order dismissing the case without prejudice on April 13, 2010. [Doc. 1 ¶ 45; Doc. 1-1 at 45–46.] Plaintiff's case 09-3109 was filed on December 1, 2009 [Doc. 1 ¶ 12], and the magistrate judge filed a Report and Recommendation recommending summary dismissal, which Plaintiff received on December 29, 2009 [*id.* ¶ 21; Doc. 1-1 at 21–26]. The district court entered an order dismissing the case without prejudice on January 19, 2010. [Doc. 1 ¶ 40; Doc. 1-1 at 42–43.] Plaintiff's ALC appeals were filed on December 4 and 7, 2009 and were dismissed on February 4, 2010. [Doc. 1 ¶¶ 13, 61; Doc. 1-1 at 9–10; Doc. 1-3 at 28–30.]

the Report and Recommendation was not contrary to the law [*id.* at 42–43]; therefore, Plaintiff cannot establish 09-3109 presented a nonfrivolous claim. Accordingly, the Court concludes Plaintiff has failed to establish an actual injury resulting from Defendants' alleged deprivation of Plaintiff's right to access the courts, and the Court recommends Defendants' motion for summary judgment be granted on this claim.

**Redress of Grievances Claim**

Plaintiff alleges Cocciolone violated Plaintiff's First Amendment right to seek redress of certain grievances when she failed to process some of Plaintiff's grievances relating to the failure to provide him with law books and failed to investigate the claims presented in Plaintiff's Grievance Number 0212-10. [*Id.* ¶¶ 52–60.]

There is no constitutional right to a grievance procedure. *Jones v. N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 137–38 (1977). Even if the prison provides for a grievance procedure, violations of those procedures do not amount to a civil rights cause of action. *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (citing *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991); *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988)) ("[T]he Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state."). Therefore, Plaintiff does not have a § 1983 cause of action based on his allegations that Cocciolone failed to process and investigate some of Plaintiff's

grievances.[8]  Accordingly, the Court recommends Defendants' motion for summary judgment be granted as to Plaintiff's redress of grievances claim.

**Due Process Claim**

Plaintiff contends he was entitled to receive up to three law books a day, five days a week, but he was restrained from access to law books by a thirty-day law library restriction imposed without due process. [Doc. 1 ¶¶ 7, 66.] Plaintiff also contends the failure to investigate his grievances violated due process. [*Id.* ¶ 66.]

The Due Process Clause states, "No State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1.[9] An inmate seeking to invoke the protection of the Due Process Clause must establish that one of

---

[8] In his response in opposition to Defendants' motion for summary judgment, Plaintiff contends that if prison officials do not have to abide by the prison's grievance policy and procedure, there is the possibility that inmates will not be able to exhaust their claims as required by the Prison Litigation Reform Act ("PLRA"). [Doc. 46-1 at 7.]  The Court finds Plaintiff misapprehends the import of the PLRA.

The PLRA requires a prisoner to exhaust administrative remedies before filing a § 1983 action concerning his confinement. 42 U.S.C. § 1997e(a).  The United States Supreme Court has held that the PLRA's exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

An inmate's failure to exhaust administrative remedies is an affirmative defense that must be properly raised by the defendant. *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.3d 674, 681 (4th Cir. 2005); *see also Jones v. Bock*, 549 U.S. 199, 216 (2007).  Exhaustion is defined by each prison's grievance procedure, not the PLRA; an inmate must comply with his prison's grievance procedure to exhaust his administrative remedies. *Jones*, 549 U.S. at 218.  However, as the Supreme Court has emphasized, an inmate can only exhaust those administrative remedies that are available to the inmate. *Woodford v. Ngo*, 548 U.S. 81, 85 (2006) ("Prisoners must now exhaust all 'available' remedies, not just those that meet federal standards."); 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions . . . until such administrative remedies as are *available* are exhausted." (emphasis added)).

Thus, the PLRA recognizes an inmate may not have an opportunity to attempt to remedy his grievances through an administrative process.  Consequently, a prison official's alleged obstruction of access to a grievance procedure should not prevent an inmate from presenting his claims to a court, as long as the court is satisfied that administrative remedies are not available to the inmate.  Accordingly, the Court finds Plaintiff's argument regarding exhaustion of claims unpersuasive.

[9] Although Plaintiff alleges a due process claim arising under the Fifth and Fourteenth Amendments [Doc. 1 at 21 ¶ 66], Plaintiff's claim is properly analyzed as a claim pursuant only to the Due Process Clause of the Fourteenth Amendment, which applies to the states, because Plaintiff has alleged claims only against state officials, *see* U.S. Const. amend. XIV, § 1 ("No *State* shall . . . ." (emphasis added)).

13

these interests—life, liberty, or property—is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). In particular,

> [a] liberty interest may arise from the Constitution itself, by reason of guarantees implicit in the word "liberty," *see, e.g.*, *Vitek v. Jones*, 445 U.S. 480, 493-494, 100 S.Ct. 1254, 63 L.Ed.2d 552 (1980) (liberty interest in avoiding involuntary psychiatric treatment and transfer to mental institution), or it may arise from an expectation or interest created by state laws or policies, *see, e.g.*, *Wolff v. McDonnell*, 418 U.S. 539, 556-558, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) (liberty interest in avoiding withdrawal of state-created system of good-time credits).

*Id.* In *Sandin v. Conner*, the Supreme Court refined the test for when a state has created a liberty interest, abrogating the method of parsing the language of particular regulations to discern whether a state had created a liberty interest:

> [W]e recognize that States may under certain circumstances create liberty interests which are protected by the Due Process Clause. But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

515 U.S. 472, 483–84 (1995) (internal citations omitted). Thus, "challenged prison conditions cannot give rise to a due process violation unless those conditions constitute 'atypical and significant hardship[s] on [inmates] in relation to the ordinary incidents of prison life.'" *McKune v. Lile*, 536 U.S. 24, 37 (2002) (quoting *Sandin*, 515 U.S. at 484).

Here, Plaintiff has failed to demonstrate his alleged lack of access to law books imposed an atypical and significant hardship. Plaintiff states that, as an inmate housed in SMU, his freedoms were severely limited. [Doc. 1 ¶ 10 (stating SMU inmates "are locked in their cells 23 hours a day with one hour for recreation outside. Inmates['] only access

14

to the law library while on SMU is through [] Johnson.")]. Even so restricted, Plaintiff's own evidence demonstrates he was able to file cases and he received law books on several days each month. [*See, e.g.*, Doc. 1 ¶¶ 11–13, 16–17, 41–42, 47, 49–50; Doc. 1-1 at 9–10, 42–46; Doc. 1-3 at 28–30.] Further, as discussed above, Plaintiff has failed to demonstrate that the alleged deprivation of access to the courts resulted in an actual injury. Moreover, Plaintiff has failed to demonstrate that Cocciolone's alleged failure to investigate Plaintiff's grievances imposed atypical or significant hardship. Plaintiff alleges an investigation would have revealed he was being denied access to law books. [*Id.* at 19 ¶ 60.] As previously discussed, Plaintiff has failed to establish that the alleged deprivation of access to law books imposed an atypical and significant hardship; consequently, the Court concludes a failure to investigate the alleged deprivation of access does not violate the Due Process Clause. Further, the record reveals Cocciolone responded to Plaintiff's concerns regarding his access to law books. [Doc. 1-1 at 1–3, 29; Doc. 1-3 at 26; Doc. 40-14 ¶¶ 4–6.] Therefore, the Court finds Plaintiff has failed to establish any alleged deprivation of access to law books or an investigation of his grievances was an atypical or significant hardship and recommends Defendants' motion for summary judgment be granted as to this claim.

**Equal Protection Claim**

Plaintiff argues Defendants' actions violated Plaintiff's Fourteenth Amendment right to equal protection because similarly situated inmates were afforded adequate, proper, meaningful, and sufficient access to the courts, as well as investigations of and opportunities to redress their grievances, but Plaintiff was not afforded such access, investigations, and opportunities. [Doc. 1 ¶ 67.]

The Equal Protection Clause of the Fourteenth Amendment prohibits states from denying any person equal protection of the laws. U.S. Const. amend. XIV, § 1. In the Fourth Circuit, a prisoner must demonstrate two elements to establish an equal protection claim:

> To succeed on an equal protection claim, a plaintiff must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination. Once this showing is made, the court proceeds to determine whether the disparity in treatment can be justified under the requisite level of scrutiny.

*Morrison*, 239 F.3d at 654. The requisite level of scrutiny is the rational basis test rather than strict scrutiny, even if the disparate treatment implicates the prisoner's fundamental rights. *Id.* at 654–55 (quoting *Turner*, 482 U.S. at 89). Therefore, to be valid, the disparate treatment must be reasonable in light of the security and management concerns of the prison system. *Id.* at 655.

Here, as previously discussed, Plaintiff has failed to demonstrate a violation of the right to access to the courts or the right to seek redress of grievances. Moreover, there is no evidence in the record that similarly situated inmates were treated differently. To survive a motion for summary judgment, the non-moving party may not rest on the allegations averred in his pleadings but must demonstrate specific, material facts exist that give rise to a genuine issue. *Celotex*, 477 U.S. at 324. Consequently, the Court finds Plaintiff has failed to demonstrate a genuine issue of material fact sufficient to survive Defendants' motion for summary judgment and recommends Defendants' motion be granted as to Plaintiff's equal protection claim.

**Gross Negligence Claim**

Finally, Plaintiff contends Cocciolone was grossly negligent in responding to and taking action on Plaintiff's Grievance Numbers 0212-10 and 0156-10. [Doc. 1 ¶ 68.]

First, gross negligence is not actionable under § 1983. *See Daniels v. Williams*, 474 U.S. 327, 328–36 (1986); *Davidson v. Cannon*, 474 U.S. 344, 345–48 (1986); *Pink v. Lester*, 52 F.3d 73 (4th Cir. 1995); *Ruefly v. Landon*, 825 F.2d 792, 793–94 (4th Cir. 1987). Negligence is a cause of action under state law, and § 1983 does not impose liability for violations of duties of care arising under state law. *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 200–03 (1989).

Second, to the extent Plaintiff alleges a state law cause of action pursuant to the South Carolina Tort Claims Act ("SCTCA"), the Court would have jurisdiction over the claim because it is part of the same case or controversy, arising from a common nucleus of operative fact, as Plaintiff's § 1983 claims. 28 U.S.C. § 1367(a); *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966). The SCTCA provides that a governmental entity is liable for loss resulting from the supervision, protection, control, confinement, or custody of a prisoner if conducted in a grossly negligent manner. S.C. Code Ann. § 15-78-60(25). "Gross negligence is the intentional conscious failure to do something which it is incumbent upon one to do or the doing of a thing intentionally that one ought not to do"; thus, gross negligence is the failure to exercise slight care. *Etheredge v. Richland Sch. Dist. One*, 534 S.E.2d 275, 277 (S.C. 2000) (citing *Clyburn v. Sumter Cnty. Dist. Seventeen*, 451 S.E.2d 885 (S.C. 1994); *Richardson v. Hambright*, 374 S.E.2d 296 (S.C. 1988)). Alternatively, gross negligence has been defined as the absence of care that is necessary under the circumstances. *Id.* (citing *Hollins v. Richland Cnty. Sch. Dist. One*, 427 S.E.2d 654 (S.C. 1993)).

However, while the Court would have jurisdiction over a claim brought pursuant to the SCTCA, Plaintiff has failed to demonstrate Cocciolone failed to exercise slight care. Plaintiff's own evidence shows Cocciolone responded to Plaintiff's grievances regarding Plaintiff's alleged deprivation of access to law books. [Doc. 1 ¶¶ 55–59; Doc. 1-1 at 1–3, 29; Doc. 1-3 at 26.] Moreover, as explained above, Plaintiff has failed to establish a violation of his rights to access to the courts and to seek redress of grievances. Therefore, the Court cannot find Cocciolone was grossly negligent in addressing Plaintiff's grievances. As a result, the Court recommends granting Defendants' motion for summary judgment as to Plaintiff's gross negligence claim.

**Qualified Immunity**

Defendants argue they are entitled to qualified immunity because their conduct did not violate any clearly established rights of which a reasonable government official would have known. [Doc. 40-1 at 12–13.] Specifically, Defendants contend Plaintiff cannot cite to any authority that holds an inmate has a constitutional right to receive law books within a specified time after making a request or to receive daily delivery of request law books. [*Id.* at 12.] Defendants also argue the law is clear that Plaintiff is not constitutionally entitled to a grievance procedure. [*Id.*] Because Plaintiff has failed to allege an actual violation of his constitutional rights, the Court agrees Defendants are entitled to qualified immunity.

Qualified immunity protects government officials performing discretionary functions from civil damage suits as long as the conduct in question does not "violate clearly established rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Thus, qualified immunity does not protect an official who violates a constitutional or statutory right of a plaintiff that was clearly established at the

time of the alleged violation such that an objectively reasonable official in the official's position would have known of the right.  *Id.*  Further, qualified immunity is "an immunity from suit rather than a mere defense to liability."  *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

To determine whether qualified immunity applies, a court must determine "'whether the plaintiff has alleged the deprivation of an actual constitutional right at all[] and . . . whether that right was clearly established at the time of the alleged violation.'"  *Wilson v. Layne*, 526 U.S. 603, 609 (1999) (quoting *Conn v. Gabbert*, 526 U.S. 286, 290 (1999)). "[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action[,] assessed in light of the legal rules that were 'clearly established' at the time it was taken."  *Anderson v. Creighton*, 483 U.S. 635, 639 (1987) (citing *Harlow*, 457 U.S. at 819).  For purposes of this analysis, a right is "clearly established" if "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right."  *Id.* at 640.

District court and court of appeals judges are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."  *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).  If a court decides in the negative the first prong it considers—i.e., the court decides the plaintiff has not alleged the deprivation of an actual constitutional right or the right was not clearly established at the time of the alleged violation—the court need not consider the other prong of the qualified immunity analysis. *See id.* at 243–45; *Torchinsky v. Siwinski*, 942 F.2d 257, 260 (4th Cir. 1991) (holding the

court "need not formally resolve" the constitutional question of "whether the [plaintiffs] were arrested without probable cause" to address the plaintiffs' § 1983 claim; the court stated that it "need only determine whether [the defendant]—a deputy sheriff performing within the normal course of his employment—acted with the objective reasonableness necessary to entitle him to qualified immunity").

Here, as explained above, Plaintiff has failed to allege a violation of an actual constitutional right. Accordingly, the Court determines Defendants are entitled to qualified immunity because Defendants' conduct did not "violate clearly established rights of which a reasonable person would have known." *Harlow*, 457 U.S. at 818.

## **RECOMMENDATION**

Wherefore, based upon the foregoing, the Court recommends Defendants' motion for summary judgment be GRANTED.

IT IS SO RECOMMENDED.

s/Jacquelyn D. Austin
United States Magistrate Judge

February 15, 2012
Greenville, South Carolina